**IN THE CIRCUIT COURT OF CLAY COUNTY, LIBERTY, MISSOURI**

| | | |
|---|---|---|
| **RICHARD SHANE JACKSON,** | ) | |
| **P.O. Box 61** | ) | |
| **Lexington, Missouri 64067,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** 19CY-CV06278 |
| | ) | |
| | ) | |
| **MAVERICK TRUCKING & EXCAVATING, LLC,** | ) | **Div No.** 4 |
| **Serve at:** 11222 NE 131st. St. | ) | |
| Liberty, Missouri 64068 | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **JEFF SOLIGO CONSTRUCTION CO., INC.** | ) | |
| **Serve at:** 11222 NE 131st. St. | ) | |
| Liberty, Missouri 64068 | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JEFFREY M. SOLIGO,** | ) | |
| **Serve at:** 9236 N. Kentucky Ave | ) | |
| Kansas City, Missouri 64157 | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED PETITION

COMES NOW Plaintiff Richard Shane Jackson ("Shane Jackson"), by and through his attorney of record, and for his First Amended Petition against Defendants Maverick Trucking & Excavating, LLC ("Maverick Trucking"), Jeff Soligo Construction Co., Inc. ("Soligo Construction"), and Jeff Soligo (collectively, the "Defendants"), hereby states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Richard Shane Jackson is a resident and citizen of Lexington, Lafayette County, Missouri.

1

EXHIBIT

**B**

2.      Defendant Maverick Trucking & Excavating, LLC is a Missouri Limited Liability Company and its registered agent Carol Diane Soligo may be served at the registered business address: 11222 NE 131st St., Liberty, Missouri 64068.

3.      Defendant Jeff Soligo Construction Co., Inc. is a Missouri Corporation and its registered agent Jeffrey M. Soligo may be served at the registered business address: 11222 NE 131st St., Liberty, Missouri 64068.

4.      Defendant Jeffrey M. Soligo is a citizen and resident of Clay County, Missouri and may be served at his residence: 9236 N. Kentucky Ave., Kansas City, Missouri 64157, or the registered business address of Soligo Construction: 11222 NE 131st St., Liberty, Missouri 64068.

5.      The Defendants are subject to jurisdiction in this Court through Missouri citizenship, conducting business in Missouri, and commission of a tortious act in Missouri. Jurisdiction is also proper in this Court because 29 U.S.C. § 216 authorizes suit in any Federal or State court for violating 29 U.S.C. § 206 by paying below minimum wage.

6.      Venue is proper in this Court pursuant to MO. REV. STAT. section 508.010 because Plaintiff was first injured in Clay County, Missouri by the wrongful acts of Defendants alleged herein.

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

7.      In or around June of 2017, Plaintiff Shane Jackson began working for Maverick Trucking and Soligo Construction driving trucks for them.

8.      Defendants Maverick Trucking and Soligo Construction agreed to pay Shane Jackson 30 percent (30 %) of the gross proceeds received from the use of the truck Richard Jackson operated for them.

2

9.      On or about April 17, 2019, Defendants paid Shane Jackson $1,439.13, which is 30 percent (30 %) of the $4,797.10 gross proceeds received for the use of the truck. This was the last time Defendants properly paid Plaintiff according to their agreement. (*See*, Exhibit 1: Pay Statement for week ending April 7, 2019).

10.     On or about April 10, 2019, Plaintiff was involved in an accident that required a tow out of the ditch. The towing company charged the Defendants $275.00 for towing the truck out of the ditch.

11.     Defendants wrongfully withheld $275.00 from Plaintiff's paycheck for the tow bill.

12.     Through agreement and course of dealing, Defendants have a contract to pay Plaintiff 30 percent (30 %) of the gross proceeds received from the truck Plaintiff drives for them.

13.     From April 8, 2019 to April 14, 2019, Plaintiff operated the truck for 79.5 hours.

14.     Upon information and belief, for the week ending April 14, 2019, Defendants billed the truck at $110.00 per hour, for a total of $8,745.00.

15.     Defendants were required to pay Plaintiff 30 percent (30 %) of the gross proceeds received from the use of the truck, or $2,623.50 for the week ending April 14, 2019.

16.     For the week ending April 14, 2019, instead of paying Plaintiff 30 percent (30 %) of the gross proceeds for the use of the truck, Defendants paid Plaintiff only $408.70 for 79.5 hours of driving, which amounts to $5.14 per hour. After tax withholding, Plaintiff received a check for $371.43 for 79.5 hours of driving. (*See*, Exhibit 2: Paycheck for Week ending April 14, 2019).

17.     Upon information and belief, Defendants paid Plaintiff minimum wage of $8.60 per hour for 79.5 hours for the week ending April 14, 2019, but wrongfully deducted $275.00 from Plaintiff's paycheck for the tow bill, which brought Plaintiff's pay below minimum wage for the week ending April 14, 2019.

18.    For the week ending April 14, 2019, Plaintiff's pay was $275.00 below minimum wage.

19.    Plaintiffs did not provide notice of a reduction in pay, as required by RSMo § 290.100, from the agreed upon 30 percent (30 %) of the gross proceeds received from the use of the truck.

20.    After receiving a complaint from the Department of Labor, Defendants added $168.67 to Plaintiff's pay for the following week ending April 21, 2019. (*See*, Exhibit 3: Pay Statement for Week Ending April 21, 2019). Adding $168.67 to Plaintiff's pay still did not even bring Plaintiff's pay to minimum wage because Plaintiff's pay for the week ending April 14, 2019 was $275.00 below the minimum wage.

21.    For the week ending April 21, 2019, Plaintiff worked 26.5 hours. (*See*, Exhibit 3).

22.    For the week ending April 21, 2019, Defendants falsely claimed that the truck was billed out at minimum wage for a total of $227.90. (*See*, Exhibit 3).

23.    The truck was used for work on the railroad, which had previously been billed out at $110.00 per hour. Upon information and belief, Defendants received $2,915.00 from the railroad for the 26.5 hours that the truck was used.

24.    At 30 percent (30 %) of the gross proceeds from the use of the truck, as agreed, Defendants owed Plaintiff $874.00 for the week ending April 21, 2019.

25.    For the week ending April 21, 2019, Defendants paid Plaintiff only $68.37 for 26.5 hours of work, which is a rate of $2.58 per hour. Upon information and belief, Defendants falsely claimed to bill out the truck at minimum wage and paid Plaintiff only 30 percent (30 %) of the minimum wage. (*See*, Exhibit 3).

4

26. Upon information and belief Defendants violated Federal and Missouri minimum wage laws by paying Plaintiff below minimum wage for the weeks ending April 14, 2019 and April 21, 2019. *See*, 29 U.S.C. § 206 and RSMO § 290.520.

27. Upon information and belief, Defendants regularly pressured the Plaintiff to exceed the maximum of 60 hours driving per week contained in 49 C.F.R. § 395.3.

28. Upon information and belief, if Plaintiff refused loads, even loads that would put the Plaintiff over his maximum driving hours for the day or week, Defendants would punish the Plaintiff by not giving him any work.

29. The Defendants pressuring Plaintiff to work beyond the maximum hours permitted for driving caused Plaintiff a high degree of stress and negatively impacted his health.

30. Defendants terminated Plaintiff on April 16, 2019 and the paycheck for the week ending April 21, 2019 was Plaintiff's last paycheck.

31. The Defendants overworking Plaintiff, terminating Plaintiff, and refusing to pay Plaintiff the amount he was owed, caused the Plaintiff a tremendous amount of stress and anguish, and negatively impacted his health.

32. The Defendants overworking the Plaintiff, terminating the Plaintiff, and refusing to pay Plaintiff the amount he was owed, caused the Plaintiff to have to relocate with his family to a motel and sometimes live out of his vehicle until such time he can afford to make arrangements to move into an apartment or house.

33. On June 26, 2019, after the filing of the original Petition, Plaintiff suffered a stroke and spent several days in the hospital, as a direct and proximate result of the stress caused by the Defendants overworking the Plaintiff, terminating the Plaintiff, and refusing to pay the Plaintiff what Defendants owed to the Plaintiff.

5

## COUNT I – BREACH OF CONTRACT

34.     Plaintiff reincorporates by reference each and every statement, allegation and averment contained in the preceding paragraphs as if fully set forth herein.

35.     In or around June of 2017, Defendants and Plaintiff entered into an oral contract whereby Plaintiff would drive a truck for Defendants and Defendants would pay Plaintiff 30 percent (30 %) of the gross proceeds received from Plaintiff's use of the truck.

36.     An oral agreement and course of dealing that manifests the agreement can create a binding contract.

37.     The contract between Defendants and Plaintiff was binding because Defendants orally agreed to pay 30 percent (30 %) of the gross proceeds received from Plaintiff's use of the truck and did so from when Plaintiff began working for Defendants in June of 2017, until in or around the beginning of April 2019.

38.     Defendants had an enforceable duty to pay Plaintiff 30 percent (30 %) of the gross proceeds received from the use of the truck.

39.     Upon information and belief, the truck was billed out at $8,745.00 for the 79.5 hours the Plaintiff operated the truck during the week ending April 14, 2019. Thus, Defendants owed Plaintiff $2,623.50 for the week ending April 14, 2019.

40.     Defendants paid Plaintiff only $408.70 for the week ending April 14, 2019. Thus, Defendants paid Plaintiff $2,214.80 less than required for the week ending April 14, 2019.

41.     Upon information and belief, the truck was billed out at  $2,915.00 for the 26.5 hours that the Plaintiff operated the truck during the week ending April 21, 2019. Thus, Defendants owed Plaintiff $874.00 for the week ending April 21, 2019.

6

42.     Defendants paid Plaintiff only $68.37 for the week ending April 21, 2019. Thus, Defendants paid Plaintiff $805.63 less than required for the week ending April 21, 2019.

43.     For the weeks ending April 14, 2019 and April 21, 2019, Defendants underpaid Plaintiff $3,020.00.

44.     Upon information and belief, Defendants underrepresented the amount gross proceeds obtained from Plaintiff's use of the truck for other pay periods preceding April of 2019, in order to reduce the amount Defendants paid to Plaintiff.

45.     Defendants owe Plaintiff 30 percent (30 %) of any proceeds obtained from Plaintiff's use of the truck that were underrepresented by Defendants.

46.     Defendants' willful, wanton, reckless, extreme, and outrageous conduct, and conscious disregard for the rights of Plaintiff exhibits illegal and amoral conduct that warrants the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against all Defendants for a reasonable sum of money in excess of twenty-five thousand dollars ($25,000) as will fairly and reasonably compensate Plaintiff Richard Shane Jackson for damages, for costs herein expended and incurred, for prejudgment interest, for postjudgment interest, for attorney's fees, and for such other and further relief that the Court deems just and proper under the circumstances.

## <u>COUNT II – VIOLATION OF RSMo § 290.520 and 29 U.S.C. § 206 FOR WAGES PAID BELOW MINIMUM WAGE</u>

47.     Plaintiff reincorporates by reference each and every statement, allegation and averment contained in the preceding paragraphs as if fully set forth herein.

48.     In accordance with 29 U.S.C. § 206, the Federal minimum wage is $7.25 per hour.

7

49.     In accordance with RSMᴏ § 290.520, the minimum wage for Missouri is the greater of the Federal minimum wage or $8.60 per hour. Thus, the minimum wage for Missouri is $8.60 per hour.

50.     For the week ending April 14, 2019, Plaintiff worked 79.5 hours.

51.     The minimum wage for working 79.5 hours is $683.70.

52.     Defendants paid Plaintiff only $408.70 for 79.5 hours of work for the week ending April 14, 2019. This equals a rate of only $5.14 per hour.

53.     Defendants violated RSMo § 290.520 and 29 U.S.C. § 206 for paying Plaintiff a rate of only $5.14 per hour for the week ending April 14, 2019.

54.     For the week ending April 21, 2019, Plaintiff worked 26.5 hours.

55.     The minimum wage for working 26.5 hours is $227.90.

56.     Defendants paid Plaintiff only $68.37 for 26.5 hours of work for the week ending April 21, 2019. This equals a rate of only $2.58 per hour.

57.     Defendants violated RSMo § 290.520 and 29 U.S.C. § 206 for paying Plaintiff a rate of only $2.58 per hour for the week ending April 21, 2019.

58.     For the weeks ending April 14, 2019 and April 21, 2019, Defendants underpaid Plaintiff $3,020.00.

59.     29 U.S.C. § 216 (b) authorizes employee suits for minimum wage violations in any Federal or State Court of competent jurisdiction.

60.     29 U.S.C. § 216 states: "The court in such action [action for violation of minimum wage] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. (emphasis added).

8

61.     29 U.S.C. § 216 provides for liquidated damages in an amount equal to the amount of lost wages.

62.     Defendants' willful, wanton, reckless, extreme, and outrageous conduct, and conscious disregard for the rights of Plaintiff exhibits illegal and amoral conduct that warrants the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against all Defendants for a reasonable sum of money in excess of twenty-five thousand dollars ($25,000) as will fairly and reasonably compensate Plaintiff Richard Shane Jackson for damages, for costs herein expended and incurred, for prejudgment interest, for postjudgment interest, for attorney's fees, and for such other and further relief that the Court deems just and proper under the circumstances.

## COUNT III – VIOLATION OF RSMo § 290.100 FOR FAILURE TO PROVIDE 30 DAYS NOTICE PRIOR TO REDUCTION OF WAGES

63.     Plaintiff reincorporates by reference each and every statement, allegation and averment contained in the preceding paragraphs as if fully set forth herein.

64.     RSMo § 290.100 requires employers to provide employees with 30 days' notice prior to reducing wages.

65.     Defendants agreed to pay Plaintiff 30 percent (30 %) of the gross proceeds received from the Plaintiff's use of the truck and did so from when Plaintiff began working for Defendants in June of 2017 until the first week of April, 2019.

66.     Defendants may not reduce Plaintiff's wage without providing 30 days' notice of the reduction in wages.

67.     Defendants did not provide Plaintiff with any notice that they were reducing his wages.

9

68.     Even if Defendants could reduce Plaintiff's wage to minimum wage, Federal law and Missouri law prohibits employers from paying employees below minimum wage.

69.     Defendants paid Plaintiff below minimum wage for Plaintiff's last two pay periods for the weeks ending April 14, 2019 and April 21, 2019.

70.     RSMo § 290.100 provides: that "[an employer who fails to provide proper notice of a wage reduction] shall forfeit [the difference in wages] and pay each party affected thereby the sum of fifty dollars, to be recovered by civil action in the name of the injured party, with costs."

71.     Defendants' willful, wanton, reckless, extreme, and outrageous conduct, and conscious disregard for the rights of Plaintiff exhibits illegal and amoral conduct that warrants the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against all Defendants for a reasonable sum of money in excess of twenty-five thousand dollars ($25,000) as will fairly and reasonably compensate Plaintiff Richard Shane Jackson for damages, for costs herein expended and incurred, for prejudgment interest, for postjudgment interest, for attorney's fees, and for such other and further relief that the Court deems just and proper under the circumstances.

## COUNT IV – UNJUST ENRICHMENT

72.     Plaintiff reincorporates by reference each and every statement, allegation and averment contained in the preceding paragraphs as if fully set forth herein.

73.     Plaintiff conferred a benefit upon Defendants in an amount equal to the amount of underpaid wages.

74.     On or about April 10, 2019, Plaintiff was in an accident and a tow truck needed to tow the truck from the ditch. The tow company charged Defendants $275.00 for the tow.

75.     Plaintiff is not responsible for the $275.00 tow charge.

76.     Defendants wrongfully and unjustly withheld $275.00 from Plaintiff's paycheck for the week ending April 14, 2019 for the tow charge.

77.     Plaintiff conferred a benefit upon Defendants in the amount of $275.00.

78.     Defendants appreciated the benefits of the wages they underpaid and the tow charge they withheld from Plaintiff's paycheck.

79.     The Defendants accepted and retained the benefits of the underpaid wages and tow charge under circumstances that are inequitable and unjust.

80.     Plaintiff is damaged in the amount of the underpaid wages and the tow charge Defendants wrongfully withheld from Plaintiff's pay.

81.     Defendants' willful, wanton, reckless, extreme, and outrageous conduct, and conscious disregard for the rights of Plaintiff exhibits illegal and amoral conduct that warrants the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against all Defendants for a reasonable sum of money in excess of twenty-five thousand dollars ($25,000) as will fairly and reasonably compensate Plaintiff Richard Shane Jackson for damages, for costs herein expended and incurred, for prejudgment interest, for postjudgment interest, for attorney's fees, and for such other and further relief that the Court deems just and proper under the circumstances.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

82.     Plaintiff reincorporates by reference each and every statement, allegation and averment contained in the preceding paragraphs as if fully set forth herein.

83.     Defendants have a legal duty to pay Plaintiff according to the terms of their implied contract.

84.     Defendants have a legal duty to pay Plaintiff minimum wage or higher.

11

85.     Defendants have a legal duty not to reduce Plaintiff's wages without providing 30-day's advance notice.

86.     Defendants breached their duty to Plaintiff by paying Plaintiff less than minimum wage with no notice.

87.     Defendants knew or should have known that their conduct in refusing to pay Plaintiff what they owed Plaintiff, reducing Plaintiff's wages with no notice, paying Plaintiff less than minimum wage, and terminating Plaintiff with no notice involved an unreasonable risk of causing distress.

88.     Defendants' failure to pay Plaintiff what they owed Plaintiff, failure to provide notice before reducing wages, failure to pay Plaintiff above minimum wage, and termination of Plaintiff with no notice was the proximate cause of the severe distress suffered by Plaintiff.

89.     The severe distress Defendants caused Plaintiff through their illegal and negligent conduct by underpaying Plaintiff is medically significant because the distress resulted in Plaintiff suffering a stroke and being hospitalized for several days.

90.     Defendants had a duty to Plaintiff not to pressure or even allow Plaintiff to drive over the maximum hour limits set by the Missouri Department of Transportation.

91.     The Missouri Department of Transportation has adopted the driving hour limits set forth in 49 C.F.R. § 395.3.

92.     Upon information and belief Defendants routinely pressured Plaintiff to drive beyond the limits enumerated in 49 C.F.R. § 395.3 and adopted by the Missouri Department of Transportation.

93.     49 C.F.R. § 395.3(a)(1) and the Missouri Department of Transportation prohibit a driver from driving without first taking 10 consecutive hours off duty.

12

94.     Upon information and belief Defendants routinely pressured Plaintiff to drive without having 10 consecutive hours off-duty.

95.     49 C.F.R. § 395.3(a)(3) and the Missouri Department of Transportation prohibit a driver from driving more than 11 hours during any 24-hour period.

96.     Upon information and belief, Defendants regularly pressured Plaintiff to drive more than 11 hours during a 24-hour period.

97.     49 C.F.R. § 395.3(b)(1) and the Missouri Department of Transportation prohibit a driver from operating a commercial motor vehicle more than 60 hours during any period of 7 consecutive days.

98.     Upon information and belief, Defendants regularly pressured Plaintiff to drive more than 60 hours during a period of 7 consecutive days.

99.     During the week ending April 14, 2019, Plaintiff operated the truck for 79.5 hours. This averages to 11.36 hours per day during that seven-day period. Upon information and belief, this is just one example of Defendants overworking the Plaintiff in blatant violation of the driving hour limits set forth in 49 C.F.R. § 395.3 and adopted by the Missouri Department of Transportation.

100.     Upon information and belief, Defendants pressured Plaintiff to exceed maximum driving times by punishing Plaintiff when he refused trips by not employing him to drive at all for long stretches and/or threatening to withhold trips, if Plaintiff refused to exceed maximum hours.

101.     Defendants breached their duty to Plaintiff by pressuring Plaintiff to exceed the driving limits set forth in 49 C.F.R. § 393.3 and adopted by the Missouri Department of Transportation.

13

102.     Defendants knew or should have known that overworking Plaintiff and pressuring Plaintiff to exceed the maximum driving hours set forth in 49 C.F.R. § 393.3 and adopted by the Missouri Department of Transportation involved an unreasonable risk of causing distress.

103.     The Defendants pressuring Plaintiff to exceed maximum driving hours is the proximate cause of the severe distress suffered by Plaintiff.

104.     The severe distress suffered by Plaintiff is medically significant because the distress led to Plaintiff suffering a stroke for which he was hospitalized for several days.

105.     On June 26, 2019, Plaintiff suffered a stroke and was hospitalized for several days as a direct and proximate result of being overworked, by the Defendants, in addition to the stress of being terminated and being paid less than minimum wage for the work he performed.

106.     Defendants' willful, wanton, reckless, extreme, and outrageous conduct, and conscious disregard for the rights of Plaintiff exhibits illegal and amoral conduct that warrants the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against all Defendants for a reasonable sum of money in excess of twenty-five thousand dollars ($25,000) as will fairly and reasonably compensate Plaintiff Richard Shane Jackson for damages, for costs herein expended and incurred, for prejudgment interest, for postjudgment interest, for attorney's fees, and for such other and further relief that the Court deems just and proper under the circumstances.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

107.     Plaintiff reincorporates by reference each and every statement, allegation and averment contained in the preceding paragraphs as if fully set forth herein.

108.     Defendants acted intentionally and recklessly by pressuring Plaintiff to exceed maximum driving hours.

14

109. Defendants acted intentionally and recklessly by reducing Plaintiff's pay with no notice.

110. Defendants acted intentionally and recklessly by paying Plaintiff less than minimum wage, wrongfully withholding a tow charge from Plaintiff's pay, then terminating Plaintiff with no notice.

111. The Defendants' conduct in pressuring Plaintiff to exceed maximum driving hours is extreme and outrageous.

112. The Defendants' conduct in reducing Plaintiff's pay with no notice is extreme and outrageous.

113. The Defendants' conduct in paying Plaintiff less than minimum wage, wrongfully withholding a tow charge from Plaintiff's pay, and terminating Plaintiff with no notice is extreme and outrageous.

114. The Defendant's intentional, reckless, extreme, and outrageous conduct is the cause of severe emotional distress suffered by the Plaintiff.

115. As a direct and proximate result of Defendants' intentional, reckless, extreme, and outrageous conduct, Plaintiff was forced to live with his family in a motel and out of his car.

116. As a direct and proximate result of Defendants' intentional, reckless, extreme, and outrageous conduct, Plaintiff was put under so much stress that he suffered a stroke and was hospitalized for several days.

117. Defendants' willful, wanton, reckless, extreme, and outrageous conduct, and conscious disregard for the rights of Plaintiff exhibits illegal and amoral conduct that warrants the imposition of punitive damages.

15

Electronically Filed - Clay - July 16, 2019 - 04:29 PM

WHEREFORE, Plaintiff prays for judgment against all Defendants for a reasonable sum of money in excess of twenty-five thousand dollars ($25,000) as will fairly and reasonably compensate Plaintiff Richard Shane Jackson for damages, for costs herein expended and incurred, for prejudgment interest, for postjudgment interest, for attorney's fees, and for such other and further relief that the Court deems just and proper under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

By: /s/Damian F. Bakula
Damian F. Bakula  #67938
**BAKULA LAW, LLC**
1828 Swift Ave., Suite 302
North Kansas City, MO 64116
Telephone: (816)385-1991
Facsimile: (844) 645-7626
damian@bakulalaw.com
***ATTORNEY FOR PLAINTIFF***

16

Electronically Filed - Clay - June 12, 2019 - 05:08 PM

Weekend Pay
4-7-19

R Shone Jackson
4/5 finished works = # 1155.00
4/6 finished works = 1155.00
4/1 EG & Sons = 769.50
4/2 EG & Sons = 684.00
4/3 EG & Sons = 684.00
4/4 EG & Sons = 349.60
                          #4797.10

#4797.10 x 30% = #1439.13

Date Pd
4-17-19

Check #2103

#1439.13
- 96.50 FED
 1342.63
- 61.00 State
 1281.63
- 89.23 fica
 1192.40
- 20.87 med
#1171.53



Plaintiff Exhibit

**1**

Electronically Filed - Clay - June 12, 2019 - 05:08 PM

Richard S. Jackson

Employee ID jackson
Social Sec : xxx-xx-5170

| | This Check | Year to Date | |
|---|---|---|---|
| | 408.70 | 6,149.52 | |
| | | 50.70 | Salary |
| Gross | -25.34 | -381.28 | |
| Fed_Income | -5.93 | -89.17 | |
| Soc_Sec | -6.00 | -158.00 | |
| MEDICARE | | | |
| St_Income | | | |

Net Check: $371.43        Total        408.70

Pay Period Beginning Apr 8, 2019
Pay Period Ending Apr 14, 2019

Check Date 4/24/19
Weeks in Pay Period 1

Apr 24, 2019

371.43

Three Hundred Seventy-One and 43/100 Dollars

Richard S. Jackson
321 N 17th Street
Lexington, MO  64067

Duplicate

Richard S. Jackson

Employee ID jackson
Social Sec : xxx-xx-5170

| | This Check | Year to Date | | | Total |
|---|---|---|---|---|---|
| Gross | 408.70 | 6,149.52 | | | 408.70 |
| Fed_Income | | 50.70 | Salary | | |
| Soc_Sec | -25.34 | -381.28 | | | |
| MEDICARE | -5.93 | -89.17 | | | |
| St_Income | -6.00 | -158.00 | | | |

**Plaintiff Exhibit**

**2**

Net Check: $371.43        Total        408.70

Pay Period Beginning Apr 8, 2019
Pay Period Ending Apr 14, 2019

Duplicate
Check Number 1752

Check Date 4/24/19
Weeks in Pay Period 1

Electronically Filed - Clay - June 12, 2019 - 05:08 PM

Week ending
4-21-19

Sherr Jackson

4/16 Griegos 2hrs = work     $ 17.20
4/16 Griegos hauls 2hrs =      17.20
4/15 finished works 12hr =    103.20
4/17 finished works 5hr =      43.00
4/18 finished works 5.5hr =    47.30
                          $ 227.90

$ 227.90 × 30% = $ 68.37 plus
$ 168.67 added to check

                $ 237.04
Date Pd         - 0 — fed
5-1-19          237.04
                - 0 — state
                237.04
Check # 2128    - 14.70 — fica
                222.34
                - 3.44 — med
                $ 218.90

Last Check

Plaintiff Exhibit

**3**